UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEN JACOBSON | CIVIL ACTION |
| VERSUS | NO. 22-4912 |
| USAA CASUALTY INSURANCE COMPANY | SECTION "R" |

## ORDER AND REASONS

Before the Court is defendant USAA Casualty Insurance Company's ("USAA") motion to confirm appraisal award,[1] which plaintiff Ben Jacobson opposes.[2] For the following reasons, the Court denies the motion.

### I. BACKGROUND

Plaintiff Ben Jacobson's home was allegedly damaged by Hurricane Ida in 2021.[3] He reported a claim to USAA, his home insurance provider, in September 2021.[4] Following USAA's inspection of the property, USAA informed Jacobson that the damage to his property did not exceed the $5,700 deductible.[5] In February 2022, Jacobson received an estimate from

---

[1]   R. Doc. 29.
[2]   R. Doc. 33.
[3]   R. Doc. 33-1 at 2.
[4]   *Id.* at 1–2.
[5]   *Id.* at 2

CMR Construction and Roofing ("CMR") that identified $121,277.17 in damage.[6] In April 2022, USAA reinspected the property and again determined that the damage was not covered under the insurance policy because most of the damage was caused by wear and tear.[7]

Jacobson retained the law firm McClenny, Moseley & Associates ("MMA") and filed this suit on December 4, 2022.[8] On January 27, 2023, MMA invoked the appraisal clause of the insurance policy,[9] which states in full:

> Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
> a. Pay its own appraiser; and
> b. Bear the other expense of the appraisal and umpire equally.

---

6      R. Doc. 29-2 at 83.
7      *Id.* at 128.
8      R. Doc. 1.
9      R. Doc. 29-2 at 130.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.[10]

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "actual cash value", replacement cost, or subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. This appraisal process and binding authority granted to the appraisers and umpire can only be expanded and modified by written mutual consent signed by you and us.[11]

By February 8, 2023, the parties had selected their appraisers and the umpire.[12] MMA selected plaintiff's appraiser.[13] Allegedly, the appraisers set a joint inspection, but the plaintiff's appraiser did not show up.[14] The USAA appraiser allegedly sent his findings to plaintiff's appraiser sometime after February 15, but plaintiff's appraiser failed to submit any assessment himself or engage with USAA appraiser's position.[15]

---

[10]   R. Doc. 29-2 at 34–35.
[11]   *Id.* at 60. The last paragraph was amended under an endorsement provided by USAA. *Id.* at 53.
[12]   R. Doc. 29-2 at 136.
[13]   R. Doc. 33-1 at 4.
[14]   *Id.* at 133.
[15]   *Id.* at 134.

On March 2, 2023, the Eastern District of Louisiana ordered a stay on every case handled by MMA concerning Hurricane Ida claims.[16] MMA was found to have fraudulently claimed to represent people it did not and sent hundreds of false representation letters to insurance carriers.[17] This investigation mirrored steps taken in the Western District of Louisiana months earlier, where that court investigated MMA for similar fraudulent conduct.[18] The Western District stayed MMA's cases after October 20, 2022, to prevent MMA from mass-settling their cases during the court's review of the firm.[19] The Western District suspended MMA from practicing in that district on March 3, 2023.[20] Further, the Louisiana Insurance Commissioner issued a notice of wrongful conduct letter to the firm on February 17, 2023, notifying it that it was under investigation for insurance fraud.[21] Additionally, the Louisiana Supreme Court suspended the managing partner's—and attorney on this case's—Louisiana law license on March 3, 2023. *In re Huye*, 2023-00277, 356 So. 3d 1000, 1001 (La. 2023).

---

16   R. Doc. 6.
17   *Id.*
18   *In Re McClenny Moseley & Associates PLLC*, No. 23-mc-00062, doc. 1 at 1 (W.D. La. Mar. 3, 2023).
19   *Id.* at 1–2.
20   *Id.* at 4–5.
21   *Id.* at 3; *see also* Louisiana Dep't of Ins., Cease and Desist Notice (Dec. 2, 2024), ldi.la.gov/docs/default-source/documents/publicaffairs/ pressreleases/mma-cease-and-desist-notice.pdf?sfvrsn=959f4752_0.

Plaintiff alleges that, after his case was stayed in early March, he did not know that the appraisal kept going.[22] Plaintiff emailed MMA on March 27, requesting that his case be transferred to a new law firm.[23] MMA informed plaintiff on March 30 that, because the firm was preparing a large number of withdrawal documents for the matters they handled in Louisiana courts, the case's transfer would likely take multiple weeks.[24] It is clear that MMA intended to withdraw from his case at this point.[25] By April 3, every attorney with a Louisiana bar license, including all of plaintiff's attorneys, had resigned from the firm.[26]

While this withdrawal and transfer process was pending, in April 2023, plaintiff's appraiser allegedly invoked the umpire but then did not engage further with the umpire or the appraisal process.[27] On May 31, 2023, plaintiff's three attorneys officially withdrew from his case, leaving him without any representation on record.[28] The case was still not transferred to plaintiff's new counsel.

---

[22]   R. Doc. 33-1 at 4.
[23]   R. Doc. 33-2 at 3.
[24]   *Id.* at 1–2.
[25]   *Id.*
[26]   R. Doc. 8 at 1.
[27]   R. Doc. 29-2 at 134.
[28]   R. Doc. 10.

On June 19, 2023, while the case was judicially stayed and plaintiff was without representation, the final appraisal report was issued and signed by USAA's appraiser and the umpire.[29] Plaintiff's appraiser did not sign the award. That appraisal found that the house incurred $2,340 worth of damage, again resulting in damages below the insurance deductible.[30]

On June 30, 2023, Chief Magistrate Judge Michael North sent a letter to plaintiff informing him that, to proceed with his lawsuit, he could take one of three actions: (1) retain a new lawyer, (2) represent himself, or (3) dismiss the lawsuit and waive his rights regarding the insurance claim at issue therein.[31] Plaintiff responded by July 10, 2023, notifying the Court that he retained new counsel,[32] and on July 13, 2023, the Court enrolled his counsel of record and lifted the judicial stay.[33]

Plaintiff alleges that he did not know the appraisal award was signed until his new attorneys received a copy of the appraisal as part of the case's initial disclosures.[34] He avers that no appraiser or umpire ever requested information from him or communicated with him.[35]

---

[29]  R. Doc. 29-2 at 77.
[30]  *Id.*
[31]  R. Doc. 13.
[32]  R. Doc. 14.
[33]  R. Doc. 17.
[34]  R. Doc. 33-1 at 4.
[35]  *Id.*

USAA submitted this motion to confirm the appraisal award, arguing that it is binding on the parties pursuant to the policy's terms.[36] Plaintiff opposes the motion and argues that the appraisal award should not be confirmed for a variety of reasons, including that the appraisal award is nonbinding to the parties, or at least that the policy is ambiguous as to the binding nature of the appraisal award, that it was rendered while the case was stayed and without participation by plaintiff, and that USAA and its appraiser acted with bias by withholding that information from the umpire.[37]

The Court considers the motion below.

## II.   DISCUSSION

A court will confirm an appraisal award that results in a fair, just, and reasonable award. A court is not bound to confirm an award that contains mistakes of fact, was made without proper authority, or is the result of fraud, mistake, or misfeasance. *See In re Waters*, 93 F.2d 196, 200 (5th Cir. 1937); *see also St. Charles Par. Hosp. Serv. Dist. No. 1 v. United* Fire & Cas. Co., 681 F. Supp. 2d 748, 760 (E.D. La. 2010). "Mere inadequacy of the amount of the award . . . would not be sufficient to authorize a court of equity to

---

[36]   R. Doc. 29-1 at 1.
[37]   R. Doc. 33 at 2.

interfere unless the inadequacy is so great as to indicate corruption or bias on the part of the appraisers." *Dawes v. Cont'l Ins. Co. of City of New York*, 1 F. Supp. 603, 605–06 (E.D. La. 1932). When using its equitable powers to determine if an appraisal award should be set aside, the court's "determination, by its very nature, is somewhat discretionary, and the [c]ourt must be guided by all the means available to it." *In re S. Land Title Corp.*, 301 F. Supp. 379, 414 (E.D. La. 1968).

Under the unique circumstances here, the Court will not confirm the appraisal award. Appraisal was initiated by MMA, a law firm representing plaintiff that was found to have engaged in fraudulent practices.[38] MMA not only initiated the appraisal but also selected plaintiff's appraiser and was presumably the entity that was to pay plaintiff's appraiser before the firm went under. The appraisal process was largely conducted while the case was stayed and plaintiff was without representation. Barely a month after MMA-initiated the appraisal on plaintiff's behalf, the case was judicially stayed to allow for an *in camera* inspection of over 600 Hurricane Ida cases involving the firm for potential fraudulent practices.[39] For months leading up to the Eastern District's stay, MMA was under investigation by the Western District

---

[38]   R. Doc. 6.
[39]   *Id.* at 4.

and the Louisiana Insurance Commissioner. At the same time as the Eastern District stay, MMA's Louisiana managing partner was suspended by the Louisiana Supreme Court and, within a month, every remaining attorney with a Louisiana bar license had resigned.[40] No lawyer that could represent plaintiff remained employed at MMA.[41] Then, seventy-eight days after the judicial stay, the appraisal award was confirmed. Plaintiff effectively had no representation after MMA appointed an appraiser in early February since MMA was already marred in investigations, and soon thereafter, the managing partner and lawyer on this case was suspended. Thus, plaintiff had no lawyer acting to make sure the appraiser, whom counsel appointed, was doing the job he was hired to do, and that was envisioned by the insurance contract's appraisal provision.

Further, plaintiff's appraiser did nothing of note during the process. He was retained by MMA, whose viability as a firm and ability to practice was in jeopardy during the entire time he was employed. He did not attend the group inspection, submitted no assessment position, and did not rebut USAA appraiser's position. He did not, as the contract requires, "separately set the amount of the loss."[42] Further, no appraiser contacted or communicated

---

[40]    R. Doc. 8.
[41]    *Id.*
[42]    R. Doc. 29-2 at 34.

with plaintiff during the process. Plaintiff was not even notified that the award was completed, while USAA received an update from their appraiser on June 1[43] and the signed appraisal award, sans plaintiff's appraiser's signature.[44] Plaintiff's appraiser was completely absent except for invoking the umpire just after every Louisiana attorney resigned from MMA. MMA did not do anything to ensure the appraiser performed his duty, and in fact, he did not.

As Chief Magistrate Judge Michael North described in a letter to plaintiff to re-open his case, this case was temporarily frozen.[45] To continue to do work behind the scenes was against the intent and spirit of the stay, because the stay was designed to protect MMA's clients by preserving their rights.[46] An appraisal conducted in an MMA-led case, utilizing an MMA-appointed appraiser, while the case was stayed, MMA was restricted from any participation and was actively withdrawing, and plaintiff was unable to transfer this case to any new lawyer, is fundamentally unfair. Plaintiff did not have a fair chance to engage in the appraisal process. The Court finds

---

[43]   *Id.* at 133.
[44]   *Id.* at 77.
[45]   R. Doc. 13 at 1.
[46]   *Id.*

that it is inequitable and unjust to approve this appraisal award when it was arrived at in such a one-sided process.

Because of the inequitable circumstances upon which this appraisal award was rendered, the Court will not confirm it. The parties are welcome to conduct another appraisal with full participation from both sides.

Plaintiff was not under a three-month time limit to challenge the award. The law that defendant cites for the three-month window, La. R.S. § 9:4213, is from Louisiana's Binding *Arbitration* Law. As the appraisal provision explicitly states, "This is not a provision providing for or requiring arbitration."[47] That statutory time limit does not apply here.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to confirm appraisal award.

New Orleans, Louisiana, this __3rd__ day of December, 2024.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

47   R. Doc. 29-2 at 60.